UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

HOTEL AND GAMING TRADES COUNCIL,

                  Petitioner,

     - against -

123 WASHINGTON, LLC,

                  Respondent.
_____

25-cv-6655 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

    The petitioner, Hotel and Gaming Trades Council, AFL-CIO, f/k/a New York Hotel and Gaming Trades Council, AFL-CIO (the "Union"), has filed a petition to confirm an arbitration award (the "Petition") pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §§ 185, et seq. See First Am. Verified Pet. ("Pet.") 2, ECF No. 6. The respondent, 123 Washington, LLC ("123 Washington") has not opposed the Petition. For the reasons explained below, the Petition is **granted.**

I.

    The following uncontested facts are taken from the complaint and evidence submitted in support of the Petition.[1]

    The Union is a labor organization as defined by Section 2(5) of the LMRA, 29 U.S.C. § 152(5); it represents nearly

_____

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

40,000 workers in the hotel, hospitality, and gaming industries in New York and northern New Jersey. Pet. ¶ 4; Mem. in Supp. of. Pet. ("Br.") 1, ECF No. 7. Respondent 123 Washington is the owner of The Washington by LuxUrban, f/k/a the W New York Downtown Hotel (the "Hotel"). Pet. ¶ 5. At all relevant times, 123 Washington was an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2). Id. ¶ 7. The Union has negotiated employment on behalf of its members in the regional hotel industry through successive collective bargaining agreements known as Industry Wide Agreements ("IWAs"). Id. ¶ 8.

In October 2010, the Union and 123 Washington entered into an Assumption Agreement, whereby 123 Washington agreed to be bound by the current IWA and any successive IWA. Id. ¶ 10; see also Ex. C. to Pet. ("2010 Assumption Agreement") 1, ECF No. 6-3. In July 2015, 123 Washington expressly adopted and agreed to bind itself on its own behalf and on behalf of "any current or future owner, operator, or manager, and their respective affiliated and related entities, successors and assigns" to the terms of a successor IWA. Pet. ¶ 11; see also Ex. D to Pet. ("Me-Too Agreement"), ECF No. 6-4.

In September 2020, 123 Washington sought a new managing agent. Pet. ¶ 12. During this search, 123 Washington entered into an agreement with the Union, binding the prospective new agent to the IWA through a Successor Agreement. Id. ¶ 12; Ex. E

2

to Pet. ("Successor Agreement"), ECF No. 6-5. The Successor Agreement incorporated the Office of the Impartial Chairperson ("OIC") arbitration provision of the IWA, which provides that "[a]ny and all disputes between the parties or regarding the interpretation or application of this Agreement shall be subject to the grievance and arbitration provisions of the IWA, incorporated herein in their entirety by reference." Successor Agreement ¶ 4. On November 15, 2022, 123 Washington again entered into an Assumption Agreement, re-binding itself to the IWA after hiring a new managing agent, LuxUrban. Pet. ¶ 13; Ex. F to Pet. ("2022 Assumption Agreement"), ECF No. 6-6.

On April 2, 2025, the Union initiated arbitration proceedings against 123 Washington before the OIC based on LuxUrban's alleged failure to comply with the IWA. Pet. ¶ 14. The alleged failures included: LuxUrban's failure to post a bond at the OIC, LuxUrban's failure to pay contributions to the New York Hotel Trades Council and Hotel Association of New York City, Inc. Health Benefits Fund, Pension Fund, Legal Fund, Industry Training Fund, and Scholarship Fund (collectively, the "Funds") for varying periods over two years, LuxUrban's failure to make 401(k) contributions, and other contractual and statutory violations. Id. ¶¶ 17-23. The Union also demanded that 123 Washington post a bond to the OIC pursuant to the IWA. Id.

3

A hearing was scheduled for April 28, 2025. 123 Washington was notified and failed to appear at the April 28 hearing and also failed to provide a reason for its nonappearance. Id. ¶ 15. Subsequently, Arbitrator Aaron Shriftman determined that LuxUrban had violated the IWA and further determined that 123 Washington, as signatory to the two Assumption Agreements, was obligated to pay the amounts due and post a bond. Id. ¶¶ 24-25. The final award directed 123 Washington to post a bond in the amount of $1,058,568.20 with the OIC, to pay $3,048,880.07 to the Funds as required by the IWA agreement, and to pay Union members $108,462.66. Id. ¶ 26.

On August 12, 2025, the Union filed this Petition seeking confirmation of the final award. After 123 Washington's original time to respond to the Petition lapsed, the Court sua sponte extended the time to respond. See ECF Nos. 10, 12. The Court stated that, if 123 Washington did not respond by October 23, 2025, the Petition would be deemed unopposed. ECF No. 12. 123 Washington has not responded. Therefore, the Petition will be treated as unopposed.

In addition to petitioning the Court to confirm the final award, the Union seeks attorneys' fees, pre-judgment interest, post-judgment interest, and costs and disbursements.

**II.**

Section 301 of the LMRA grants federal courts jurisdiction over petitions brought to confirm labor arbitration awards. Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1988). The Supreme Court has explained that district courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987); see also Nat'l Football Leage Mgmt. Council v. Nat'l Football Leage Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016). Accordingly, an arbitration award is to be confirmed if there is even a "barely colorable justification" for the decision. U.S. Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

Although 123 Washington has failed to respond to the Petition, the Court must do more than simply issue a default judgment in favor of the Union. The Second Circuit Court of Appeals has explained that a default judgment is generally inappropriate in a proceeding to confirm or vacate an arbitration award because "[a] motion to confirm or vacate an [arbitration] award is generally accompanied by a record," and "the petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's

5

submissions." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006).

The standard for granting summary judgment is well established. The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III.

In this case, the arbitrator's award was not the arbitrator's "own brand of industrial justice." See United Paperworkers Int'l Union, AFL-CIO, 484 U.S. at 36. The arbitrator deliberated and determined that 123 Washington is liable for a payment to the Funds in the amount of $3,048,880.07, a payment to the Union in the amount of $108,462.66, and a bond payment to the OIC in the amount of $1,058,568.20. Ex. A to Pet. ("Arbitration Award") 2, ECF No. 6-1. The record submitted with the Petition included prior unpaid awards as well as an accounting of the unpaid contributions to

the Funds. The record supported the arbitrator's decision. There is no genuine dispute of any material fact and the arbitrator's decision should be confirmed.

### IV.

The Union also seeks judgment to recover pre-judgment interest, attorneys' fees, and post-judgment interest.

### A.

The Second Circuit Court of Appeals has observed that in the context of petitions to confirm arbitration awards, there is a "presumption in favor of pre-judgment interest." Waterside Ocean Navigation Co. v. Int'l Navigation Ltd., 737 F.2d 150, 154 (2d Cir. 1984). Accordingly, courts in this District "have exercised their discretion to award prejudgment interest when confirming arbitration awards under collective bargaining agreements pursuant to [Section] 301 of the LMRA," when the collective bargaining agreement indicates that the arbitration award is final and binding. Service Emps. Int'l Union, Local 32 BJ, AFL-CIO v. Stone Park Assocs., LLC, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004). Moreover, the "common practice among courts within this Circuit is to grant interest at a rate of 9%, the rate of pre-judgment interest under New York State law." Id. (citing N.Y. C.P.L.R. §§ 5001-04).

In this case, the IWA provides that arbitration of disputes between the parties is final and binding, and the Union is

therefore entitled to pre-judgment interest at a rate of nine percent from May 9, 2025 - the date of the final award by the OIC - until the date that judgment is entered in this case. See Pet. ¶ 9; Ex. B to Pet. ("IWA"), art. 26(A), ECF No. 6-2 ("All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, . . . shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto"); see 1199/SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council Inc., No. 13-cv-2608, 2014 WL 840965, at *8-9 (S.D.N.Y. Mar. 4, 2014).

**B.**

The Union also requests attorneys' fees, costs, and disbursements. "Neither Section 301 of the LMRA nor the Federal Arbitration Act provides for attorney's fees in actions to confirm an arbitration award." Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Dejil Systems, Inc., No. 12-cv-005, 2012 WL 3744802, at *4 (S.D.N.Y. Aug.29, 2012); see also Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d Cir. 1985). However, courts may exercise their "inherent equitable powers to award attorneys' fees when opposing counsel acts in bad faith," and, in

8

arbitration award confirmation proceedings, courts have awarded fees "when a challenger refuses to abide by an arbitrator's decision without justification." Dejil Systems, 2012 WL 3744802, at *4; accord Int'l Chem. Workers, 774 F.2d at 47.

Courts in this District "have routinely awarded attorneys' fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund v. All. Workroom Corp., No. 13-cv-5096, 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013); Abondolo v. H & M.S. Meat Corp., No. 07-cv-3870, 2008 WL 2047612, at *3 (S.D.N.Y. May 12, 2008). The attorneys' fees sought by the Union are also recoverable under the IWA. In relevant part, article 8B of the IWA provides that: "Any EMPLOYER against whom legal or arbitration proceedings are instituted shall be required to pay in addition to the amount of the delinquency . . . attorneys' fees and costs."

However, the Union has not submitted any record of what fees and costs it is seeking. Therefore, the Union may file a motion for attorneys' fees within fourteen days of entry of judgment. See Fed. R. Civ. P. 54(d)(2)(B). The motion should be supported by the time records for the attorneys as well as brief biographical descriptions so that the Court can determine the reasonableness of the attorneys' fees sought.

## c.

The Union is also entitled to post-judgment interest on the full amount of the judgment at the rate provided under 28 U.S.C. § 1961(a). See Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." (citing 28 U.S.C. § 1961(a))). Post-judgment interest on the entire amount of the judgment will accrue from the date of the judgment at the rate provided by 28 U.S.C. § 1961(a). See Seed Holdings, Inc. v. Jiffy Int'l AS, 5 F. Supp. 3d 565, 591 (S.D.N.Y. 2014).

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the arguments are moot or without merit. For the foregoing reasons, the petition to enforce the arbitration award is **granted**. The Clerk is directed to enter judgment as follows:

1) In the amount of $1,058,568.20 in the form of a bond at the OIC, $3,048,880.07 to the Funds, and $108,462.66 to the Union; plus pre-judgment interest at the statutory rate of 9% accruing from May 9, 2025.

2) Post-judgment interest will accrue at the statutory rate. See 28 U.S.C. § 1961(a).

When judgment is entered, the Clerk is respectfully requested to close this Case.

SO ORDERED.
Dated:    New York, New York
          December 5, 2025

_____
John G. Koeltl
United States District Judge

11